MORRIS FEDER & CO. v. CARLETON M. HERRICK.

1. On demurrer to a declaration for libel the words must be construed in the sense imputed to them by the plaintiff.
2. Words having a tendency to bring a person into ridicule, hatred or contempt are actionable if written or published.
3. Caution against imputing in the pleading a meaning to words which the facts will not sustain.

Action for publishing a libel.

There were two counts in the declaration, which were sever-ally demurred to. In the first of these counts the plaintiffs, in the inducement, were alluded to as "being the proprietors and owners of the clothing-house of Feder & Co., and being engaged in and doing business under said name of Feder & Co." There was no direct allegation that they were the owners of this house, or that they were carrying on this busi-ness. After imputing motives to the defendant in the ordinary form, it was then alleged that he "falsely, wickedly and ma-liciously did publish," &c., a certain false, scandalous, mali-cious, defamatory and libelous matter following, of and concern-ing the said plaintiffs, that is to say : "Appearances are not · always to be trusted. The clothing-house of Feder & Co., (meaning the clothing-house of said plaintiffs,) *which has been supposed exceptionally strong, asked for an extension of thirty days on part of a debt falling due on May 1st, and obtained it by—well in a peculiar manner. The meanest men are not the most successful in business, and sharp practice is seldom profit-able in the long run,"* (meaning that the said plaintiffs adopted dishonest and unmanly practice to gain an extension of time to pay a debt, and also that their actions were mean and that they were unreliable men of business, and insinuating and causing it to be believed that they were entirely insolvent and unable to pay their debts.)

The second count was founded on an alleged publication of another statement touching the plaintiffs, the contents of which are sufficiently indicated in the opinion.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the demurrant, *John W. Griggs.*

Contra, *Albert Comstock* and *A. B. Woodruff.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The grounds of objection

against the counts of this declaration are, that the words charged to be libelous are not so, *per se*, and that they cannot be made so by regarding them relatively to the business of the plaintiffs, because, as it is contended, the fact that the plaintiffs were engaged in business is not adequately alleged in the declaration. It is quite clear that the circumstance that the plaintiffs were traders is not found in this declaration in the usual form of a direct and substantive averment, as it should be if such circumstance formed an essential part of the cause of action; but I shall not pause to consider the legal effect of this informality, as I regard it as entirely unimportant with respect to the issue of law now to be decided. For, if all allusion to the occupation of the plaintiffs be struck from these counts, it seems to me very clear that the residue of each of them exhibits a legal ground of suit.

And in deciding whether this be so or not, there are two considerations to be kept in mind, namely: first, that this is an action for libel; and, second, that the words of the paper alleged to be defamatory are to be received by the court in the sense put upon it by the plaintiffs. The effect of these two principles of judgment is, that if the plaintiffs have ascribed to the words in question a meaning that involves any such aspersion of the character of the plaintiffs as would naturally have the effect of exposing them to social ridicule, contempt, hatred, or to similar degradations, it must be admitted that an actionable offence is manifested. So far as it concerns a right to sue, it matters not whether the written words were aimed at a person engaged in trade or business, or at one who is without any occupation. The rule is settled, on grounds of public policy, that the publication of written slander, unlike mere oral defamation, confers a right of action on the person injured, though no special loss or damage can be proved. In the case of the *Archbishop of Tuam* v. *Robeson*, 5 *Bing.* 17, Chief Justice Best, in a sentence, defines the distinction between these two kinds of torts; referring to an antecedent decision, he says: "According to that case, in order to support an action for oral slander, something criminal must have

been imputed; but in a libel, any tendency to bring a party into contempt and ridicule is actionable, and, in general, any charge of immoral conduct, although in matters not punishable by law." This distinction was acted on by this court in *Hand* v. *Winton*, 9 *Vroom* 122.

Estimating the legal value of the averments in the first count of this declaration by the standard thus erected, it appears to be indisputable that the paper set forth, as interpreted by the plaintiffs, is libelous. If the writing had stated, in the language of its interpretation by the plaintiffs, " that the said plaintiffs adopted dishonest and unmanly practice to gain an extension of time to pay a debt, and also that their actions were mean and that they were unreliable men of business," it does not seem possible reasonably to assert that such charges were not calculated to bring the objects of them into contempt, and to degrade them in social estimation. And this is the signification which the court must put upon the writing in question, no matter how foreign such signification may be to the actual and usual import of its terms, for it is the undoubted right of the plaintiffs to construe this writing in their own way, by force of the one hundred and twenty-fourth section of the Practice act. At the trial it will, indeed, be incumbent on the plaintiffs to show that this writing is actionable, either in its natural or imputed sense; but for the purpose of settling the pleadings the imputed sense cannot be discarded. In this view this count is sustainable.

And so, by the same course of reasoning, the second count must be adjudged sufficient on the present issue, although as a pleading at common law it would be regarded as full of defects, and although many of its interpretations of the alleged libelous writing appear to be very forced and arbitrary. But laying aside, as we must on this occasion, such apparent incongruities and seeming misconstructions when we find that one of the sentences in the writing set out in this count is translated by the plaintiffs into a charge that they " were wholly unprincipled and disreputable and dishonest;" that another is averred to compare them to a notorious criminal; and that a third

stated that "in their business engagements they were utterly and entirely shameful, deceitful, dishonorable and disgraceful," it is certainly clear that it is quite out of the question for the court to decide that an actionable libel is not set forth in this part of this record. In its application to this count this demurrer must fail.

Before leaving this case it will not be amiss to remark that the foregoing decision must not be considered as an endorsement of a mode of pleading in the class of cases that consists in presenting on the record a specious cause of action constituted out of intensifications and exaggerations of the opprobrious terms of the writing alleged to be libelous. For it is obvious that while such a course may triumph over a demurrer, it may lead to embarrassment and defeat at the trial. A signification imputed in the pleading to the writing underlying the suit can be of no avail when the issue is trying before the jury, unless, in the light of the case as proved, such signification appears to be the true meaning of the written words. To make an innuendo of any practical value, therefore, to the plaintiff, it must coincide with the truth of the case; if it contains a misstatement or a substantial amplification of the real meaning of the writing in question, it might as well, when the trial is reached, be struck from the record. And it is very doubtful whether, in instances of obvious misstatements, amendments ought to be permitted when the case has progressed as far as the stage of trial.